UNITED STATES DISTRICT COURT
Southern DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2022 FEB 10  AM 10: 35

JOSEPH GARCIA,
    petitioner,

-AGAINST-

WRIT OF HABEAS CORPUS petition

CYRUS R. VINCE, JR., District Attorney of New York County;
Letitia James, Attorney General of New York State;
    Respondents.

## INTRODUCTION

1. Petitioner Joseph Garcia, a New York State prisoner currently incarcerated at Great Meadow Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

2. I was tried, convicted and sentenced to an aggregated sentence of 37 years imprisonment in a single jury trial for three separate incidents under a seven count grand jury jurisdictional defective indictment pursuant to CPL 210.20(4) as a result of ineffective trial counsel, prosecution misconduct, the trial court judges misconduct and ineffective appellate counsel in violation of criminal procedure law statutes, state and federal constitutions.

3. The defective omnibus and suppression decisions and the courts jury charge in violation of New York Rules of Court in the trial court record denying me my right to prepare an adequate defense against the people's charges, fair suppression hearings, trial and direct appeal in violation of protected and secured state and federal due process of law under the state constitution, Article 1, Section 6 and the fourteenth amendment of the United States Constitution requiring reversal of convictions dismissing the jurisdictional defective indictment with prejudice on the grounds: I was denied the effective assistance of appellate counsel based on counsel's failure to raise issues on direct appeal regarding numerous serious trial errors and the ineffective trial counsel's

in failing to contest these serious trial errors in violation of state constitution, Article 1, section 6 and the sixth amendment of the United States constitution.

4. Appellate counsel was assigned by the Appellate Division, First Department to represent me on direct appeal. The trial court record, pretrial, trial and sentence transcripts were provided to appellate counsel for examination for serious trial errors as meritorious legal issues to be raised on direct appeal.

5. Appellate counsel filed direct appeal with Appellate Division, First Department on September 4, 2012 raising three issues: (1) the trial court abused it's discretion in denying severance motion; (2) the trial court erred in instructing the jury that it could consider the similarities between the Jing and Caparos incidents to establish identity and (3) excessive 37 year imprisonment sentence. Appellate Division affirmed appeal on August 7, 2014. People v. Garcia, 120 AD3d 406 (1 Dept. 2014).

STATEMENT OF FACTS

6. This case was born on the illegal arrests and seized arrest evidence, i.e. personal property on January 10, 2009 at 12:30pm for the Caparos and Jing cases with no identification based on flagrant police misconduct leading to the discovery of an I-card as probable cause for the arrest on the Broadway Spa case at 2:00pm during the booking arrest process for the Caparos case and many hours before detectives coerced and tainted the illegal lineup identifications for the Caparos case at 4:15pm and the Jing case at 4:30pm.

7. On November 23, 2009, Detective Pettit testified in the suppression hearing on cross-examination on January 10, 2009 at 12:30pm, upon my initial arrival at the 7th precinct detective placed me inside an interview room and he took my jacket and everything on me outside the interview room. He looked me up in the police computer system discovering I was wanted for the Broadway Spa case and he started calling other detective squads. (suppression transcript at page 68).

8. On December 7, 2009, Detective Pettit testified in criminal trial on cross-examination: on January 10, 2009 upon my initial arrival at the 7th precinct Detective placed me inside an interview room and he locked the door. (trial transcript at page 555-556).

9. I was a white hispanic man, 33, 5'10, 180lbs., brown eyes, long black braids (mustache with full lips) wearing a blue and black northface jacket and I did not fit the Jing description on December 18, 2008: a tall dark skinned black man with black color eyes wearing a snorkel hooded black ski jacket and the Caparos description on December 20, 2008: a hispanic or light skinned black man, 5'7, between 20-25 years old wearing a navy blue parker.

10. I was forcibly stopped because I was a hispanic man wearing a blue and black northface jacket walking on 7th street and Avenue D by Detectives Pettit and Madden of the 7th precinct when Detective Pettit told me I fit the description of a person who committed a robbery in reference to the Caparos and Jing cases. On November 23, 2009, Detective Pettit testified in the suppression hearing on cross-examination: He believed it was after he discovered the I-Card on the Broadway Spa case when he seized my personal property; the jacket matched the description we were looking at him for the other two robberies (the Caparos and Jing cases). (suppression hearing transcript at page 70).

11. Detective Pettit arrested and charged me for the Caparos case according to arrest reports date and time as January 10, 2009 at 2:00pm, photograph of my red samsung cellphone (IMEI# 352574-01-250042-5) and State benefit card for arrest evidence according to Detective Pettit date and time as January 10, 2009 at 1:26pm. Property clerk's invoice: p451241-1 blue and black jacket and p451242-1 black motorola cellphone, 1 silver motorola cellphone, 1 red samsung cellphone (IMEI#352574-01-250042-5), 3 cellphone batteries, 1 red I-pod, 1 white headphones, 2 Nextel sim cards for arrest evidence according to Detective Pettit dated January 10, 2009.

12. Detective Munoz who was not an eyewitness to the Jing crime made a positive identification

of me as the perpetrator who committed the Jing crime on December 18, 2008 according to a bulletin arrest report date and time as January 10, 2009 at 2:00pm by Detective Pettit.

12. On December 7, 2009, Detective Pettit testified on redirect examination at trial: the only time a person can be arrested for a crime is if he is identified in a lineup. (trial transcript at page 566).

13. On December 18, 2008 at 8:10am, the unduly suggestive police arranged video surveillance identification that changed Jing's initial description (a black jacket to a blue and black jacket) according to an unapproved DD5 police report by Detective Michael Haverty of the 23rd precinct.

14. On December 20, 2008, Caparas viewed a photograph of me on the police photo manager system and she did not identify me as the perpetrator who committed the crime. The photo-array of 330 photographs was not retained and safeguarded. The photo-array was not perserved as evidence in the case file according to the police photo-array procedures.

15. On January 10, 2009, I was singled out for identification by Detectives Pettit and Munoz when I was the only person in the lineup with braids in my hair as Detectives coerced Caparas and Jing to identify me as the perpetrator to the crimes. Detectives did not interview Caparas and Jing seperately, prior to viewing the lineup; obtain and record description of suspect and the fillers was not similar to my appearance according to the police lineup procedures.

16. My actual appearance and physical description; time of arrest and time of seized arrest evidence; and time I-card was discovered was not offered as evidence into the suppression hearing trial record and the suppression hearing trial court did not independently assess if I reasonably fit the Caparas and Jing descriptions for determination of probable cause for arrest and seized personal property as arrest evidence (i.e. blue and black northface jacket and state benefit card) in violation of state constitution, Article 1, Section 12 and the fourth amendment of the United States constitution.

(1. the Jing charges, counts 1 and 2 - petit larceny and second degree burglary for 11 years; 2. the Caparas charges, counts 3 and 4 - first degree burglary and attempted second degree robbery for 15 years; and 3. the Broadway spa charges, counts 6 and 7 - two counts of second degree robbery for 11 years. I was acquitted on count 5 - first degree robbery related to the Broadway spa.

## INEFFECTIVE APPELLATE COUNSEL

17. First, appellate counsel failed to raise this meritorious legal issue on direct appeal that would have resulted in reversing the convictions dismissing counts 1 and 2 of the jurisdictional defective indictment pursuant to CPL 210.20(4) in violation of state constitution, Article 1, section 6 and the sixth amendment of the united states constitution rendering ineffective appellate counsel.

18. The law is based on facts in the trial court record and the indictment is jurisdictionally defective by virtue of failing to charge an offense under counts 1 and 2 which do not state an offense, then the matter is automatically preserved for appellate review.

19. The people accepted the order of dismissal on the Jing charges (December 18, 2008) under counts 1 and 2 dated April 20, 2009 by Judge Carol Berkman's omnibus motion decision pursuant to CPL 210.20(4) for failure to file application with additional evidence seeking courts authorization to submit the reduced charges to the same or another grand jury. I was tried, convicted and sentenced to 11 years on charges (petit larceny and second degree burglary) that did not exist, were dismissed and was not by a grand jury indictment. I already served and completed the illegal 11 year sentence.

20. On April 20, 2009, Judge Carol Berkman declared in her order of dismissal pursuant to CPL 210.20(4) the Jing charges (December 18, 2008) were defective; the evidence before the grand jury was legally insufficient to establish the charges of first degree robbery and first degree burglary under the theory Garcia used or threatened the immediate use of a

dangerous instrument and the legal instructions to the grand jury by the prosecutor was improper under the theory of "what appears to be a weapon". In order to be a dangerous instrument an object must be readily capable of causing death or other serious physical injury. Obviously the danger posed by an object that is non-existent, or even unseen, cannot be evaluated. Here, the victim specifically testified that she did not see an object in Garcia's pocket. Count 1, first degree robbery, P.L.160.15(3) is reduced to petit larceny, P.L. 155.25 and Count 2, first degree burglary, P.L.140.30(2) is reduced to second degree burglary, P.L.140.25(2). If the people wish to represent the charges so reduced, they must make application to the court on notice with a showing that they have additional evidence. See, CPL 210.20(4).

21. The relevant law here: Criminal procedure law § 210.20(4), provides: A court may dismiss an indictment or a count if it is defective; the evidence before the grand jury was legally insufficient to establish the offense charged; the grand jury proceeding was defective; the court may upon application of the people, in its discretion authorize the people to submit the same charges to the same or another grand jury. In the absence of authorization to submit or resubmit. The order of dismissal constitutes a bar to any further prosecution of such charges, by indictment or otherwise, in any criminal court within the county.

22. No person shall be held to answer for a crime unless on indictment of a grand jury. State Constitution, Article 1, Section 6. A fundamental and nonwaivable right to be tried on crimes charged.

23. Second, appellate counsel failed to raise these meritorious legal issues on direct appeal that would have resulted in reversing the convictions dismissing counts 3, 4, 6 and 7 of the jurisdictional defective indictment on the grounds of ineffective trial counsel, the trial court judges misconduct and prosecution misconduct in violation of state constitution, article 1, section 6 and the sixth amendment of the United States constitution; or in the alternative vacate the suppression decision and remit the case to reopen or renew suppression hearings, since the trial court suppression hearings factual findings are clearly erroneous and

unjustified, unexplained failure of counsel to raise meritorious legal issues, which if raised would have rendered reversal of convictions and or reopening or new suppression hearings constitute findings of ineffective appellate counsel.

## INEFFECTIVE TRIAL COUNSEL

24. Notwithstanding the sheer number of foregoing clear and egregious errors, trial counsel failed to place objections and arguments on the trial court record perserving issues for appellate review creating multiple serious errors compounding the denial to prepare a defense against the People's charges, fair suppression hearings, trial and direct appeal.

25. The prime requirement of the fourth amendment of the United States constitution and state constitution, Article 1, Section 12 is specificity: "A particular description of the place to be searched, and the person or things to be seized."

26. The fourth amendment of the United States constitution is a mirror reflection of the state constitution, Article 1, Section 12: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall be issued, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized."

27. The trial court record clearly established: prosecutor Larry Glasser and the trial court judges Carol Berkman and Charles Solomon violated my constitutional right to prepare a defense. The United States constitution guarantees me a meaningful opportunity to prepare and present a complete and adequate defense for suppression hearings. I was denied pretrial discovery in a timely manner despite the fact Defense Counsel filed demand to produce on January 12, 2009 and omnibus motion on March 27, 2009 to compel discovery.

28. On April 20, 2009, Judge Carol Berkman's order of dismissal on the Jing charges (December

18, 2008) pursuant to CPL 210.20(4). The people accepted the order of dismissal for failure to file application with additional evidence seeking courts authorization to submit the reduced charges to the same or another grand jury. The Jing charges did not exist and were final which made the seven count grand jury indictment jurisdictionally defective.

29. Between April 20, 2009 and November 22, 2009, which was a little more than seven months with no activity by Judge Carol Berkman, prosecutor Larry Glasser and trial counsel Montell Figgins for discovery materials entitled to me and to provide me my right to adequately prepare for suppression hearings and trial.

30. On November 23, 2009, Judge Carol Berkman transferred my case to Judge Charles Solomon to conduct the suppression hearings to make a decision based on fact and law for suppression of physical and identification evidence based on probable cause for arrest.

31. Prosecutor Larry Glasser provided trial counsel Montell Figgins 1 hour prior to the start of suppression hearings approx. 250 pages of discovery materials related to all three cases for identification evidence.

32. The needle in the haystack was buried within these documents and trial counsel complained to Judge Solomon, he just received discovery raising genuine concern defense did not have ample time to properly examine documents and adequately prepare defense blatantly telling Judge Solomon defense was at a severe disadvantage.

33. Prosecutor Larry Glasser wanted to finish the hearings as quickly as started on the same day and Judge Solomon was adamant the hearings will not be delayed and will start today and he had other cases on his calender and gave trial counsel 1 hour over the lunch break to examine discovery for facts for the purpose of proving defense case for suppression.

34. Despite trial counsel having exculpatory identification evidence in his complete possession, the police reports specifically requested for in demand to produce on January 12, 2009 and omnibus motion to compel discovery on March 27, 2009 during the course of 8 days for the 3 day suppression hearings on November 23, 25 and 30, 2009, he did not examine, investigate, obtain, know and present the facts into the suppression hearing trial court record to prove: on January 10, 2009, I was arrested and personal property seized as arrest evidence without probable cause in violation of the fourth amendment of the United States Constitution and state constitution, Article I, Section 12. The state and federal unconstitutional arrests and seized arrest evidence on the Caparas and Jing cases was based on the flagrant police misconduct leading to the discovery of an I-card as probable cause to arrest me on the Broadway Spa case leading to the illegal lineup identifications as the fruits of the illegal arrests requiring suppression of the physical evidence and identification evidence dismissing all charges in the indictment.

35. The specific exculpatory evidence was identification evidence in the police reports: (1) A police report by police officer Tahiro Sotomayor of the 23rd Precinct date and time as December 18, 2008 at 7:45am: A robbery at 221 East 106th Street at 5:00am and the Jing description: A tall dark skinned black man with black color eyes wearing a snorkel hooded black ski jacket and black jeans. No identification can be made and crime was not visable by police; a black Samsung cellphone was stolen; (2) An unapproved DD5 police report by Detective Michael Haverty of the 23rd precinct date and time as December 18, 2008 at 8:10am: the unduly suggestive police arranged video surveillance identification showing an unidentified man wearing a blue and black jacket walking into the lobby of 221 East 106th street changing Jing's initial description 25 minutes earlier to police; (3) An unapproved DD5 police report by Detective Michael Haverty of the 23rd precinct date and time as December 18, 2008 at 8:15am: I did show Jing photos on the puns machine in regards to this crime. Male blacks, 25-30, 5'8-6'0 from the 23rd precinct. Jing looked at numerous photos and was not able to make an identification at this time. The viewing last

50 minutes; (4) An unapproved DD5 police report by Detective Rafael Munoz of the 23rd precinct date and time as December 18, 2008 at 11:00am: I was informed by Detective Haverty that a female asian was robbed inside her building at 221 East 106th Street at 5:00am by a tall male black who displayed a knife and took her property; (5) A police report by Detective Rafael Munoz of the 23rd precinct date and time as January 10, 2009 at 1:00pm: I was notified by Detective Pettit of the 7th precinct Detective Squad and he had explained to me that he had stopped a male hispanic wearing a blue and black northface coat while conducting a canvass in the vicinity of 7th Street and Avenue D. The male hispanic, later known as Joseph Garcia agreed to go back to the 7th precinct to speak to Detectives; (6) photographs of my personal property, i.e. red Samsung cellphone IMEI#352574-01-250042-5 and state benefit card for arrest evidence by Detective Brian Pettit of the 7th precinct date and time as January 10, 2009 at 1:26pm; (7) property clerk invoice: p451241-1 blue and black jacket and p451242-1 black Motorola cellphone; 1 silva Motorola cellphone; 1 red Samsung cellphone IMEI #352574-01-250042-5; 3 cellphone batteries; 1 red I-pod; 1 white headphones; 2 nextel sim cards for arrest evidence date January 10, 2009 by Detective Brian Pettit of the 7th precinct; (8) A DD5 arrest report by Detective Brian Pettit of the 7th precinct date and time as January 10, 2009 at 2:00pm: Detective Madden and I brought Joseph Garcia into the 7th precinct Detective squad and Garcia was charged with robbery for the Caparos case on December 20, 2008 and Garcia's physical description: White hispanic man, 33, 5'10, 180lbs., brown eyes, long black braids (mustache with full lips). Arrest report, mugshot pedigree and fingerprint arrest report; (9) A bulletin arrest report for all three cases by Detective Brian Pettit of the 7th precinct date and time as January 10, 2009 at 2:00pm: Garcia was arrested by the 7th precinct Detective Squad for a robbery. The perpetrator followed a female asian and removed her property. (the Caparos case). The midtown south precinct has an active I-card for this perpetrator for a similar incident. (The Broadway Spa case). The 23rd squad also has made a positive identification of this individual for a similar incident. (The Jing case). Detective Pettit declared in this arrest report: Detective Munoz has made a positive identification of Joseph Garcia as the perpetrator who committed the Jing case on December 18, 2008; and (10) A criminal

background check report by Detective Rafael Munoz of the 23rd precinct date and time as January 10, 2009 at 8:00pm. Garcia's prior arrest by the 7th precinct on December 27, 2002. M02617182. criminal trespass. Criminal possession Weapon. Criminal trespass 2.

36. Trial Counsel did not investigate and obtain the police lineup identification procedures and the police photo-array procedures and challenge and expose the flagrant police misconduct.

37. On December 20, 2008, Caparos viewed a photograph of me and she did not identify me as the perpetrator. The photo-array of the 330 photographs were not retained and safeguarded. The photo-array was not perserved as evidence in the case file according to the police photo-array procedures.

38. On January 10, 2009, I was singled out for identification by Detectives Pettit and Munoz and I was the only person in the lineup with braids in my hair as Detectives coerced Caparos and Jing to identify me as the perpetrator. Detectives did not interview Caparos and Jing seperately, prior to viewing lineup: obtain and record description of suspect and the fillers was not similar to my appearance according to the police lineup procedures.

39. It has also been held that suppression hearings may determine the outcome of the prosecution and, therefore, representation by counsel may well be as essential as during the trial itself. It is clear from the foregoing that suppression hearings is a critical stage of the criminal prosecution process and since Garcia is to be afforded the constitutional guarantee of the guiding hand of counsel at every step in the proceedings against him. The fundamental right to counsel must attach with equal force at a suppression hearing as at trial.

THE TRIAL COURT JUDGES MISCONDUCT

40. On April 20, 2009, Judge Carol Berkman did not make a ruling to compel discovery in violation of CPL §240.00(1) completing ignoring Garcias omnibus motion to compel

discovery. The court must order discovery as to materials demanded but not disclosed if it finds that the refusal to comply with the demand is not justified.

41. On December 16, 2009, Judge Daniel Fitzgerald jury charge on the Jing case for count 1, petit larceny and count 2, second degree burglary in violation of CPL § 300.40. The court may submit to the jury only those counts of an indictment remaining therein at the time of its charge which is supported by legally sufficient evidence, and every count not so supported should be dismissed by a trial order of dismissal.

42. On January 19, 2010, Judge Charles Solomon suppression hearing determination in violation of McKinney's New York Rules of Court, Section 200.12 (CPL § 710.40(3)). When the motion to suppress is made before trial, the trial may not be commenced until written determination on suppression hearings. A written decision, should be entered and in which the hearing and determination are referred to the trial court. Such writings will remove any doubt for a trial or reviewing court as to what Judge Charles Solomon intended and decided. The unjustified and erroneous suppression decision came after commencement of trial on December 2, 2009 and the jury verdict conviction on December 18, 2009.

### THE SUPPRESSION DECISION

43. On January 19, 2010, Judge Charles Solomon declared in his decision on Garcia's combined suppression hearings (Dunaway, Mapp and Wade) held on November 23, 25 and 30, 2009 denying suppression and ruling on probable cause for arrest: In the courts opinion, there was probable cause to arrest Joseph Garcia based upon the descriptions that were given by the victims of both robberies (the Jing description: A tall, dark skinned black man wearing a blue and black northface jacket p.4 and the Caparas description: A hispanic or light skinned black man, 5'7, between 20-25 years old wearing a navy blue parker p.8), based upon the video surveillance tapes and still photographs made from those tapes showing the blue and black northface jacket, which looked like the one Garcia was wearing on January 10, 2009, and based on the fact that the cellphone

stolen in the robbery committed in the 23rd precinct was being used in the vicinity of 7th Street and Avenue D, in the exact location where Garcia was seen walking on January 10, 2009.

44. If all that information is considered together, an argument, and I submit, a very strong argument can be made that there was probable cause to arrest Joseph Garcia. However, even if probable cause to arrest Joseph Garcia did not exist, there certainly without any doubt was reasonable suspicion to detain him and to bring him to the precinct. Garcia was not arrested, and he voluntarily agreed to accompany the Detectives to the 7th precinct.

45. Once Detective Pettit discovered that Garcia was wanted in the Midtown South precinct and that a wanted card has been issued for his arrest. Therefore, the property removed from Garcia after he was placed under arrest at the 7th precinct was recovered pursuant to a search incident to a lawful arrest based on probable cause.

46. As part of his investigation into the robbery, Detective Munoz was able to obtain a surveillance videotape of the lobby of 221 East 106th Street and it shows a man wearing a blue and black northface jacket.

47. Caparos identified Garcia in a lineup on January 10, 2009 at 4:15pm and Jing identified Garcia in a lineup on January 10, 2009 at 4:30pm.

48. An arrest report completed by Detective Pettit on January 10, 2009, which was received in evidence at the hearing, as People's exhibit 4, lists Garcia's age as 33, his height as 5'10, and his weight as 150lbs.

49. Caparos did not view Garcia's photograph on the police photo manager because she viewed photographs of people who had been arrested by the 7th precinct and Garcia had not, prior to January 10, 2009 ever been arrested by the 7th precinct.

## THE PROSECUTION MISCONDUCT

50. Prosecutor Larry Glasser was both aware and directly involved as a participant in the transactions of the Caparas false identification evidence and the Broadway Spa employees perjured testimony committing misconduct: (1) on November 23 and 25, 2009, prosecutor intentionally withheld exculpatory identification evidence from being introduced into the suppression hearing trial court record: Exhibit 4- arrest report by Detective Pettit which reveals the time of arrest for the Caparas case at 2:00pm and Garcia's actual appearance and physical description as a white hispanic man with brown eyes (evidence arrest was without lineup identifications and Garcia did not fit the Caparas and Jing descriptions) and Exhibit 9- Haverty DD5 report which reveals the date and time as December 18, 2008 at 8:10am of the unduly suggestive police arranged video surveillance identification showing an unidentified man wearing a blue and black jacket walking into the lobby of 221 East 106th Street changing Jing's initial description 25 minutes earlier to police (a tall dark skinned black man wearing a black ski jacket to a tall dark skinned black man wearing a blue and black jacket) the hearing exhibit sheet, peoples exhibit 4 and exhibit 9 is missing from the suppression hearing trial court record; (2) on December 7, 2009, Caparas identified the perpetrator outside the courthouse to him while Garcia was incarcerated and he knew it wasn't Garcia and on December 16, 2009, he told the jury Caparas didn't identify the perpetrator outside the courthouse to him; (3) prosecutor and detectives coerced Caparas to say perpetrator was wearing a blue and black northface jacket; (4) Caparas didn't see Garcia's photograph on the police photo manager system on December 20, 2008 because Garcia was never arrested by the 7th precinct and on January 20, 2010, he told the trial court on sentencing Garcia was arrested by the 7th precinct on December 27, 2002 for trespassing and being in possession of a large knife proving Garcia's photograph was viewed and not identified and (5) crime scene collection report by police officer Groppe date and time as December 22, 2008 at 4:20am reveals manager of location (the Broadway Spa case-Michelle Lee) cleaned up the crime scene destroying all identification evidence and in trial, Michelle Lee told the jury she did not clean up the crime scene destroying

all identification evidence.

## EXHAUSTION REQUIREMENT

51. Garcia has satisfied the procedural exhaustion requirements for a federal habeas claim. Garcia utilized all avenues of appellate review within the state court system (Appellate court and court of appeals) before proceeding to this federal court; Garcia has raised a federal claim at each level of the state court system, presenting the substance of his federal claim to the highest state court. 28 U.S.C.A. § 2254(B)(1)(A).

52. A federal habeas petitioner is deemed to have exhausted state judicial remedies when the issue raised in his federal claim has been fairly presented in the state courts or petitioner has given the state courts a fair opportunity to redress the claim. 28 U.S.C.A. § 2254(B)(1)(A).

## FEDERAL HABEAS REVIEW

53. A federal habeas court may grant the writ, on grounds that a state court's decision is contrary to clearly establish federal law, if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of federal law, or if the state court decides a case differently than than the United States Supreme Court has on a set of materially indistinguishable facts. 28 U.S.C.A. § 2254(d).

54. A state court's unreasonable application of federal law, warrants federal habeas relief. 28 U.S.C.A. § 2254(d)(X).

55. A state court decision which is objectively unreasonable in light of the evidence presented may be overturned on a habeas petition. 28 U.S.C.A. § 2254(d)(2).

## FEDERAL CONSTITUTIONAL CLAIM

56. Garcia is in state custody in violation of the 6th and 14th amendments of the United States constitution and has stated a valid federal constitutional claim of ineffective appellate counsel.

## RELIEF REQUESTED

57. ISSUE ORDER GRANTING Writ of habeas Corpus petition declaring my 6th and 14th amendments of the United States Constitution were violated as I received ineffective appellate counsel: (1) Reverse the convictions on Counts 1 and 2 of the jurisdictional defective indictment pursuant to CPL § 210.20(4) dismissing charges with prejudice; and (2) Reverse the convictions on Counts 3, 4, 6 and 7 of the indictment dismissing charges with prejudice immediately releasing Garcia from State Custody or in the alternative vacate the denial of the suppression decision dated January 20, 2010 ordering the reopening or renew suppression hearings within 30 days of this Court's order granting Writ.

EXECUTED: February 7, 2022
Great Meadow Correctional Facility
BOX 51
Comstock, N.Y. 12521

Respectfully submitted,

Joseph Garcia # 10A0532
Petitioner-pro se

Pro Se Clerk's Office  
United States District Court  
Southern District of New York  
500 Pearl Street  
New York, N.Y. 10007  

Joseph Garcia #10A0532  
Petitioner-Pro Se  
Great Meadow Corr. Fac.  
Box 51  
Comstock, N.Y. 12821  

February 7, 2022

Subject: Joseph Garcia v. Cyrus R. Vince, Jr., et al.  
The filing writ of habeas corpus petition

Dear Pro Se Clerk's Office:

Please find enclosed 16 page writ of habeas corpus petition for filing with this federal court. $5.00 payment for writ of habeas corpus petition will follow this letter seperately since it's has to be taken out of my inmate accounts and it's a process. Thank you for your time and attention.

Respectfully submitted  
[signature]  
Joseph Garcia #10A0532  
Petitioner-Pro Se

cc: file

**GREAT MEADOW CORRECTIONAL FACILITY**
BOX 51
COMSTOCK, NEW YORK 12821-0051
NAME: Joseph Garcia    DIN: 10A0632

RECEIVED
FEB 10 2022
PRO SE OFFICE

NEOPOST
02/07/2022
US POSTAGE $001.56⁰
FIRST-CLASS MAIL
ZIP 12821
041M11283103

Pro Se clerk's office
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

confidential legal mail

Printed On Recycled Paper

NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
OFFENDER CORRESPONDENCE PROGRAM

NAME: Joseph Garcia   DIN: 10A0632